UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


GREGORY A. FIGEL,

        Petitioner,

v.                                       Case No. 2:06-cv-27
                                       HON. ROBERT HOLMES BELL

BARRY MCLEMORE,

        Respondent.

_____/


## REPORT AND RECOMMENDATION

        Petitioner Gregory A. Figel filed this petition for writ of habeas corpus challenging the validity of a prison misconduct guilty finding for possession of dangerous contraband. Petitioner maintains that his hearing violated his federal rights and he was denied the right to appeal. The respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts. The parties have briefed the issues and the matter is now ready for decision. In accordance with 28 U.S.C. § 636(b), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, I am recommending that this petition for writ of habeas corpus be denied.

        Petitioner presents the following issues in his petition:

    I.      Denial of right to appeal,

    II.     Denial of due process, and

    III.    MCL § 600.2963 violates equal protection.

Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Recently, the Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent

- 2 -

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Respondent first argues that petitioner never attempted to exhaust his claim in the state courts. Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77

- 3 -

(1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.

It is clear that petitioner never sought review of his claims in the Michigan Court of Appeals or the Michigan Supreme Court.  Further, petitioner never properly presented his claims to the Circuit Court.  Petitioner has asserted that he was barred from bringing his claim under MCL § 600.2963(8).  The letter from the Circuit Court dated July 11, 2005, states that:

> This Court has received your pleadings.  MCL 600.2963(8) provides:
>
> > A prisoner who has failed to pay outstanding fees and costs as required under this section shall not commence a new civil action or appeal until the outstanding fees and costs have been paid.
>
> Our records indicate that you owe the 30th Circuit Court fees or costs or both.  Therefore, in accordance with MCL 600.2963(8) the Court will not be able to file your pleadings until the outstanding balance has been paid in full.  Your pleadings are being returned to you.

It appears that petitioner never sought further judicial review of this alleged denial of his petition.  *See Bridges v. Collette*, 2008 WL 53771, *slip op.* (W.D. Mich. Jan. 2, 2008), holding that  Mich. Comp. Laws § 600.2963(8), read in conjunction with § 600.2963(7), was constitutional because judges are allowed to waive the rejection of suits brought by indigent suitors with unpaid balances.

Moreover, even if the court were to review the petition, Petitioner's claims clearly

lack merit.  The hearing officer concluded:

> **EVIDENCE/STATEMENTS IN ADDITION TO MISCONDUCT
> REPORT:** Misconduct report, statement from Johnson, investigator
> report, verification, prisoner's statement, statements from Lockett,
> Eisner, Anthony, affidavit, letters from the prisoner, statement from
> Miron, and removal record read to the prisoner.  Photos shown to the
> prisoner.   Prisoner asked about his affidavit of retaliation was
> received.  Prisoner informed that Hearing Officer viewed the video.
> Video shows the following: 93353 Officers Miron and Johnson at the
> prisoner's door.  They wait in front of his door until 93607 when they
> take the prisoner out of his cell.  Miron immediately goes into the cell
> and the prisoner is put in the shower by Johnson.  Johnson goes into
> the cell at 93646.  Staff are in the cell until 94311.  94359 prisoner is
> put back in his cell.  At 94926, when Miron is walking away from the
> prisoner's cell and going to the stairs, it appears that Miron pulls an
> object out of his left front pants pocket.  He looks at it at 094427 and
> continues to look at it as he is going up the stairs until 094429.
> Object is consistent with the bottle in the photos.  Prisoner was asked
> if he had any other comment and he stated, "No."  Prisoner informed
> of the decision and sanction prior to leaving the hearings room.  After
> prisoner left the room, Hearing Officer had an envelope of materials
> returned to the prisoner through Tweedale as the materials were
> irrelevant and unnecessary.
>
> **REASON FOR FINDING:**  VIDEO: Hearing Officer is holding the
> video to be confidential as it is from the institution's security camera
> system.  Release of the video would disclose the range and scope of
> camera coverage and jeopardize institutional security.  Prisoner not
> prejudiced by this finding as he was informed of the contents to the
> extent mentioned above and given an opportunity to comment.
> PHYSICAL EVIDENCE: Since the prisoner is not disputing that the
> bottle contains floor stripper, the photos are sufficient for purposes of
> this misconduct report.  Physical evidence may be released to the
> institution.   WITNESSES:   Prisoner requested 18 prisoners as
> witnesses as to what they observed of the incident.  These witnesses
> are not necessary nor relevant.  First, these other prisoners were not
> in a position to see and hear what occurred as they were in their cells.
> Second, statements were given by three prisoners on the misconduct
> report.   Any additional statements would be redundant of that
> information.  Prisoner also wanted Hyde, a prisoner in another unit,
> verify that he sent a letter to Miron in May about setting Hyde up on

- 5 -

another case. This verification is not necessary as no one is claiming that Hyde didn't send the letter. It is also irrelevant as it wouldn't prove what occurred five months later, in another unit. POLICY: Policy is available to the prisoner in the library and does not need to be provided for the hearing. DISQUALIFICATION: Prisoner claims that the Hearing Officer is "clearly in cahoots with staff members who are orchestrating these retaliatory acts." Hearing Officer is not in "cahoots" with anyone. Prisoner claims he has filed six legal cases against this Hearing Officer. He may have, but those are his acts and do not provide bias on the Hearing Officer's part. He also claims he is going to be filing a complaint with the Michigan State Bar and a class action lawsuit against the Hearing Officer. Again, this may be true, but it doesn't establish bias. Prisoner's generalized list of complaints about the Hearing Officer are not true. Disqualification for bias is not warranted. DOCUMENTS: Documents were returned to the prisoner after the hearing as they were determined to be either irrelevant or not necessary. Some of the documents were duplicates of documents already existing in the record and so these documents were not necessary. The other document was a lengthy "history of retaliation" dated back to May of 2003, listing 68 "acts of retaliation" by Stasewich, Suardini, and Savera. The hearing investigator refused to accept this document from the prisoner at the time of the investigation as it was irrelevant. Prisoner then sent this "history" through the mail for this record. The hearing investigator's assessment that this document is irrelevant and unnecessary is correct. First, no one is disputing the prisoner's assertion that he is claiming staff have retaliated against him. Second, even if prisoner's complaints about Stasewich, Suardini and Savera have any merit, it wouldn't prove that the prisoner did not have floor stripper in his cell on 10/13/04. DANGEROUS: On 10/13/04 it was discovered that the prisoner had a caustic substance in his cell - floor stripper. Prisoner had no authorization to have floor stripper. Prisoner knew he had the stripper since it was in a bottle, on the floor, in his cell. Prisoner claims that Miron emptied the contents of his bottle and put stripper in the bottle in retaliation for a lawsuit that the prisoner has filed against another officer for an incident in May 2003. Prisoner is not believed in his claims. First, the prisoner did not present his claims in a credible manner at the hearing. His obvious anger over the contents of the video did nothing for his claims. Second, the video contradicted the prisoner's claims. Prisoner wrote, ". . . as I was being placed in the shower Miron whispered quote: (a tag would look nice on that big toe), after making this comment he started laughing and then went to shake my cell door." Miron never placed the prisoner in the shower stall. Miron went immediately into the prisoner's cell after the prisoner exited the cell. Johnson took the

- 6 -

prisoner to the shower stall.  Prisoner demanded the video "to show that Miron came out of [] my cell with NOTHING in his hand because he had an empty bottle hidden in the crotch of his pants and thats the same bottle he went and filled with floor stripper."  True enough the officer didn't have anything in his hands when he came out of the prisoner's cell, but the officer did pull an object, that was consistent with the bottle, from his pocket after the prisoner had been placed in his cell.  This object did not come from the officer's crotch. Third, the prisoner's claims do not have the ring of truth.  It makes absolutely no sense for the officer to a) involve another officer in a fabricated misconduct, b) tell this other officer, loud enough for the prisoner and other prisoners on the wing to hear, "Dump that out and I'll use that bottle," c) unzip his pants, put the bottle in his underwear and zip up his pants in full view of another prisoner, and, d) threaten the prisoner with death in front of another officer and in front of other prisoners.  It just doesn't make any sense that the officer would empty out a bottle that the prisoner [had in] his cell, hide it in his underwear, and then fill it up with stripper to fabricate a misconduct against the prisoner.  There would be easier ways of "setting up" the prisoner than to do something like that.  Besides, if the officer was bent on framing the prisoner, one would think that the officer would have made a point to make the bottle very obvious for the camera instead of hiding the bottle in his crotch.  The officer know[s] about the security camera.  The officer's actions on the video is more in the line of someone doing his job and concentrating on what he was doing than staging anything for a camera to set up the prisoner.  Finally, it is not believable that the officer would involve himself in a situation involving other staff that occurred 2 1/2 years ago.  One would think that if something like that was to occur it would have happened long before now.  Fourth, it seems too much of a coincidence that the officer would just happen to grab the very bottle that the prisoner uses to store his "homemade floor soap" made out of a "mixture of shampoo, powder soap and smell good bath gel" that his first line of defense would have been that the officer simply made an error as to the contents of the bottle - what appeared to be stripper was not stripper, but soap.  But the prisoner never went down the path and the most logical reason that the prisoner never went down there is because he very well knew that the bottle did contain stripper and for him to have that knowledge would logically be the result of him placing that stripper in that bottle.  Prisoner claims that it is not possible for him to obtain the floor striper without staff assistance, but the prisoner is not claiming that staff gave him the stripper. (Besides, prisoners obtain a lot of things that they shouldn't have possession, but that doesn't mean that they don't possess them.  The fact that things are passed routinely among prisoners is probably

> evidenced by the prisoner's affidavit with 18 signatures, some of which were signed on the same day. It is improbable staff passed this affidavit for the prisoner and impossible to have been sent through the mail, which it should have been, because of the dates. It is more likely that the affidavit was passed on the wing by the prisoner through the use of a "fishline.") Officer factual and credible in his claims and supported by the physical evidence, statement from Johnson and the very video that the prisoner had requested. Charge upheld.

A federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir. 1988). Under Michigan law a prisoner is entitled to notice of a hearing, and the opportunity to present evidence and arguments. M.C.L. § 791.252. A hearing officer is not bound by state or federal evidentiary rules, but rather may consider "evidence of the type commonly relied upon by reasonably prudent persons in the conduct of their affairs." *Id.* Further, a hearing officer may deny a prisoner access to evidence that may pose a security concern if disclosed. *Id.* Petitioner has failed to show that his constitutional rights were violated at his misconduct hearing.

Further, the hearing officer's conclusion that Petitioner was guilty of the misconduct charge was supported by the record. It is clear that Petitioner received due process of law, and that he cannot support any claim that his constitutional rights were violated during the misconduct hearing. Prison inmates subject to serious disciplinary action are entitled to (1) 24 hours advance written notice of the charges; (2) an opportunity to appear at a hearing, to call witnesses, and present rebuttal evidence when permitting the inmate to do so will not be unduly hazardous to institutional safety; and (3) a written statement by the factfinders as to the evidence relied upon for their decision which includes a statement as to the reasons for the decision. *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974). If the prisoner received these procedural protections, and if there were "some facts"

to support the decision of the hearings officer, then the prisoner received all the process to which he was due.  *Superintendent of Massachusetts Institute, Walpole v. Hill*, 472 U.S. 445 (1985). Petitioner has failed to show that his constitutional rights were denied.

In summary, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief.  Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong.  Petitioner failed to exhaust his claim in the state courts and also received due process during his misconduct hearing. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

- 9 -

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   October 21, 2008